**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| MARIA ANGELA ALLIAUD, RODRIGO ARMANDO EMBEITA, JUAN JOSE ESQUIVEL, ANDRES SANCHEZ IBARRA, and IGNACIO ROQUE LUCERO, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>PAYONEER, INC.,<br><br>                    Defendant. | No.  1:24-cv-05378-PAE<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT PAYONEER INC.'S MEMORANDUM OF LAW IN SUPPORT**
**OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

**DLA PIPER LLP (US)**

Colleen Carey Gulliver
1251 Avenue of the Americas
New York, New York 10020-1104
Tel: (212) 335-4500
colleen.gulliver@us.dlapiper.com

Jeffrey DeGroot (*pro hac vice forthcoming*)
701 Fifth Ave. Suite 6900
Seattle, Washington 98104-7044
Tel: (206) 839-4812
jeffrey.degroot@us.dlapiper.com

*Attorneys for Defendant Payoneer Inc.*

## TABLE OF CONTENTS

**Page**

Preliminary Statement........................................................................................................1

Background ........................................................................................................................2

     1.     Payoneer's Business Service............................................................................2

     2.     Payoneer Advises Customers to Keep Their "Account Safe." ........................4

     3.     Plaintiffs' Allegations ....................................................................................4

Legal Standard ..................................................................................................................5

Argument ..........................................................................................................................6

    I.     The FAC Must Be Dismissed Because Venue is Improper. ...........................6

    II.    Plaintiffs' EFTA Claim Fails. ........................................................................7

       A.     Plaintiffs Still Fail to Allege that The Accounts Are Consumer Accounts. ............7

       B.     Payoneer is Not a Financial Institution. ...................................................10

    III.   The Terms Bar Plaintiffs' Common Law Claims. ........................................11

       A.     Plaintiffs' Negligence-Based and Quasi-Contract Claims Are Barred..................11

       B.     Plaintiffs' Damages Are Capped to Fees Paid...........................................13

    IV.   Plaintiffs' Breach of Contract Claim Fails...................................................14

       A.     Plaintiffs Seek to Impose Contractual Obligations That Do Not Exist. ................15

       B.     Plaintiffs Have Not Adequately Alleged a Refund Obligation............................17

    V.    Plaintiffs' Claim for Breach of the Duty of Good Faith and Fair Dealing Fails. ........18

    VI.   Plaintiffs' Negligence-Based Claims Are Also Barred by the Economic Loss Doctrine.......................................................................................................19

    VII.  The Unjust Enrichment Claim Fails for Additional Reasons. .....................20

    VIII. Plaintiffs Fail to State a Claim for Conversion for Additional Reasons......................21

    IX.   Plaintiffs Have Not Alleged Any Misleading Statements to Support Their Consumer Fraud Claims. .............................................................................23

    X.    Plaintiffs' GBL Claim Fails For Additional Reasons...................................25

       A.     Plaintiffs Have Not Alleged Statutory Standing Under the GBL. .........................25

       B.     Plaintiffs Have Not Alleged Causation.......................................................27

i

XI.    The Court Must Dismiss Plaintiffs' DCFA Claim...........................................................28

    A.    Plaintiffs Do Not Allege that the Challenged Practice Occurred in
        Delaware. ...................................................................................................................28

    B.    Plaintiffs' DCFA Claim Was Not Pled with Particularity. ....................................29

XII.    Plaintiffs Lack Statutory Standing For a DTPA Claim. ..............................................30

Conclusion ..............................................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albrecht v. United States*,
    329 U.S. 599 (1947)..........................................................................................................7

*Alltrista Plastics, LLC v. Rockline Indus., Inc.*,
    2013 WL 5210255 (Del. Super. Ct. Sept. 4, 2013)................................................21

*Am. Healthcare Admin. Servs. v. Aizen*,
    285 A.3d 461 (Del. Ch. 2022)..............................................................................7

*Ashall Homes Ltd. v. ROK Ent. Grp. Inc.*,
    992 A.2d 1239 (Del. Ch. 2010)............................................................................6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................6, 8

*Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*,
    134 S. Ct. 568 (2013)..........................................................................................6

*Bakerman v. Sidney Frank Importing Co.*,
    2006 WL 3927242 (Del. Ch. Oct. 10, 2006) ........................................................20

*Belfon v. Credit Check Total Consumerinfo.com, Inc.*,
    2018 WL 4778906 (E.D.N.Y. Oct. 1, 2018)......................................................3, 5

*Capitaliza-T Sociedad De Responsabilidad Limitada De Capital Variable v.*
    *Wachovia Bank of Del. Nat'l Assoc.*,
    2011 WL 864421 (D. Del. Mar. 9, 2011) ......................................................20, 22

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002)................................................................................5

*Colella v. Atkins Nutritionals, Inc.*,
    348 F. Supp. 3d 120 (E.D.N.Y. 2018) ................................................................23

*Cruz v. FXdirectDealer, LLC*,
    720 F.3d 115 (2d Cir. 2013)..............................................................................26

*Danforth v. Acorn Structures, Inc.*,
    608 A.2d 1194 (Del. 1992) ................................................................................19

*Diaz v. FCA U.S. LLC*,
    693 F. Supp. 3d 425 (D. Del. 2023)....................................................................29

*Donegal Mut. Ins. Co. v. Tri-Plex Sec. Alarm Sys.*,
  622 A.2d 1086 (Del. Super. Ct. 1992) ................................................................................13

*Drug, Inc. v. Hunt*,
  168 A. 87 (Del. 1933) ........................................................................................................21

*Eames v. Nationwide Mut. Ins. Co.*,
  412 F. Supp. 2d 431 (D. Del. 2006) ..................................................................................29

*Eames v. Nationwide Mut. Ins. Co.*,
  2008 WL 4455743 (D. Del. Sept. 30, 2008) ......................................................................29

*eCommerce Indus., Inc. v. MWA Intel., Inc.*,
  2013 WL 5621678 (Del. Ch. Sept. 30, 2013) ....................................................................13

*Edelstein v. Goldstein*,
  2011 WL 721490 (Del. Super. Ct. Mar. 1, 2011) ..............................................................19

*Fisk Ventures, LLC v. Segal*,
  2008 WL 1961156 (Del. Ch. May 7, 2008), *aff'd,* 984 A.2d 124 (Del. 2009) .................18

*Goshen v. Mut. Life Ins. Co.*,
  98 N.Y.2d 314 (2002) ........................................................................................................25

*Grand Ventures, Inc. v. Whaley*,
  632 A.2d 63 (Del. 1993) ....................................................................................................30

*Ham v. Lenovo (U.S.) Inc.*,
  664 F. Supp. 3d 562 (S.D.N.Y. 2023) .................................................................................3

*Homsey v. Vigilant Ins. Co.*,
  496 F. Supp. 2d 433 (D. Del. 2007) ..................................................................................29

*Hrycak v. Pub. Storage, Inc.*,
  2019 WL 4751522 (Del. Super. Ct. Sept. 30, 2019) ..........................................................12

*Ironforge.com v. Paychex, Inc.*,
  747 F. Supp. 2d 384 (W.D.N.Y. 2010) ................................................................................8

*Ketler v. PFPA, LLC*,
  132 A.3d 746 (Del. 2016) .........................................................................................11, 12, 13

*Kuroda v. SPJS Holdings, L.L.C.*,
  971 A.2d 872 (Del. Ch. 2009) .............................................................................18, 20, 21, 22

*Livery Coach Sols., L.L.C. v. Music Express/E., Inc.*,
  245 F. Supp. 3d 639 (D. Del. 2017) ..................................................................................30

*Mangiafico v. Blumenthal*,
  471 F.3d 391 (2d Cir. 2006)..................................................................................................3

*Martinez v. Bloomberg LP*,
  740 F.3d 211 (2d Cir. 2014)..................................................................................................6

*Matrix Parent, Inc. v. Audax Mgmt. Co.*,
  319 A.3d 909 (Del. Super. Ct. 2024) ...................................................................................11

*Matusovsky v. Merrill Lynch*,
  186 F. Supp. 2d 397 (S.D.N.Y. 2002)...................................................................................9

*Maynard v. PayPal, Inc.*,
  2019 WL 3552432 (N.D. Tex. Aug. 5, 2019)....................................................................8, 10

*Mikkilineni v. PayPal, Inc.*,
  2021 WL 2763903 (Del. Super. Ct. July 1, 2021) ...............................................................20

*Miramontes v. Ralph Lauren Corp.*,
  2023 WL 3293424 (S.D.N.Y. May 5, 2023) ........................................................................26

*Neala Commc'ns LLC v. Xerox Corp.*,
  2024 WL 4042092 (W.D.N.Y. Sept. 4, 2024) ......................................................................26

*Nemec v. Shrader*,
  991 A.2d 1120 (Del. 2010) .......................................................................................18, 19, 21

*Oden v. Boston Scientific Corp.*,
  330 F. Supp. 3d 877 (E.D.N.Y. 2018), *adhered to on reconsideration,* 2019
  WL 1118052 (E.D.N.Y. Mar. 11, 2019).................................................................................27

*Palese v. Del. State Lottery Off.*,
  2006 WL 1875915 (Del. Ch. June 29, 2006), *aff'd,* 913 A.2d 570 (Del. 2006) .......................20

*Pinkert v. Olivieri*,
  2001 WL 641737 (D. Del. May 24, 2001).............................................................................19

*Pobst v. Nanticoke Mem'l Hosp.*,
  1991 WL 166073 (Del. Super. July 30, 1991).......................................................................17

*Pratt v. Atalian Glob. Servs. Inc.*,
  2020 WL 7028690, at *15 (S.D.N.Y. Nov. 30, 2020). ..........................................................15

*Prignoli v. Bruczynski*,
  2021 WL 4443895 (E.D.N.Y. Sept. 28, 2021) ...................................................................8, 10

*Rapcinsky v. Skinnygirl Cocktails, L.L.C.*,
  2013 WL 93636 (S.D.N.Y. Jan. 9, 2013) ..............................................................................27

*Rob-Win, Inc. v. Lydia Sec. Monitoring, Inc.*,
   2007 WL 3360036 (Del. Super. Ct. Apr. 30, 2007)..................................................13, 14

*Sandoval v. Uphold HQ Inc.*,
   2024 WL 1313826 (S.D.N.Y. Mar. 27, 2024) ...........................................................23, 24, 25

*Simon v. Smith & Nephew, In*c.,
   990 F. Supp. 2d 395 (S.D.N.Y. 2013) (Engelmayer, J.) ........................................8, 9

*Spagnola v. Chubb Corp.*,
   574 F.3d 64 (2d Cir. 2009).........................................................................................27

*Stephenson v. Citco Grp. Ltd.*,
   700 F. Supp. 2d 599 (S.D.N.Y. 2010)........................................................................6

*Stock v. Firstmark Servs.*,
   2018 WL 8193373 (C.D. Cal. Dec. 12, 2018) ..........................................................10

*Taft v. Agric. Bank of China Ltd.*,
   156 F. Supp. 3d 407 (S.D.N.Y. 2016)........................................................................9

*Teamsters Local 237 v. Astrazeneca Pharm. LP*,
   136 A.3d 688 (Del. 2016) ...........................................................................................23

*Theis v. Viewsonic Corp.*,
   2013 WL 1632677 (D. Del. Apr. 16, 2013)................................................................28, 29

*Tomasino v. Estee Lauder Cos.*,
   44 F. Supp. 3d 251 (E.D.N.Y. 2014) .........................................................................23, 24

*Travis v. Navient Corp.*,
   460 F. Supp. 3d 269 (E.D.N.Y. 2020) .......................................................................28

*Turk v. Rubbermaid Inc.*,
   2022 WL 836894 (S.D.N.Y. Mar. 21, 2022) .............................................................23

*Ujvari v. 1stdibs.com, Inc.*,
   2017 WL 4082309 (S.D.N.Y. Sept. 13, 2017)...........................................................6

*Upstate Shredding, LLC v. Carloss Well Supply Co.*,
   84 F.Supp.2d 357 (N.D.N.Y. 2000)...........................................................................7

*Van Praagh v. Gratton*,
   993 F. Supp. 2d 293 (E.D.N.Y. 2014) .......................................................................5

*VLIW Tech., LLC v. Hewlett-Packard Co.*,
   840 A.2d 606 (Del. 2003) ...........................................................................................15

*Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*,
   901 A.2d 106 (Del. 2006) ...............................................................................15, 28

*West v. Access Control Related Enters., LLC*,
   2019 WL 2385863 (Del. Super. Ct. June 5, 2019) ...............................................22

*Wright v. Publishers Clearing House, Inc.*,
   439 F. Supp. 3d 102 (E.D.N.Y. 2020) ................................................................26

*Yarger v. ING Bank, fsb*,
   285 F.R.D. 308 (D. Del. 2012) ..........................................................................28

*Yuille v. Uphold HQ Inc.*,
   686 F. Supp. 3d 323 (S.D.N.Y. 2023).................................................................9

*Zachmann v. Coleman Co.*,
   2022 WL 161480 (S.D.N.Y. Jan. 18, 2022) .................................................25, 27

**Statutes**

15 U.S.C. § 1693f ...............................................................................................10

15 U.S.C. § 1693a(2) .............................................................................................7

15 U.S.C. § 1693a(9) .....................................................................................10, 11

6 Del. C. § 2512 .................................................................................................28

Delaware Consumer Fraud Act............................................................... *passim*

Delaware Deceptive Trade Practices Act ....................................................1, 2, 13, 30

Electronic Fund Transfer Act.................................................................. *passim*

N.Y. Gen. Bus. Law § 349.................................................................... *passim*

**Other Authorities**

12 C.F.R. § 1005.2(b)(1).......................................................................................8

12 C.F.R. § 1005.11 ............................................................................................10

Fed. R. Civ. P. 9(b) ....................................................................................2, 28, 29

Fed. R. Civ. P. 12(b)(6)..........................................................................................5

## PRELIMINARY STATEMENT

Payoneer Inc. ("Payoneer") is a financial services company that offers a platform through which businesses can transfer money to other businesses. Plaintiffs, customers of Payoneer who reside in Argentina, allege that in early 2024, third-party fraudsters were able to transfer money out of their Payoneer accounts without their authorization. Although Plaintiffs suggest differing theories about how these transfers occurred—and admit "it is still unclear how the hackers were able to bypass several layers of security to conduct the attack" (First Amended Complaint ["FAC"] at ¶ 90)—they blame Payoneer and have now filed an amended complaint,[1] alleging 10 causes of action: (1) violation of section 349 of the New York General Business Law ("GBL"); (2) violation of the Delaware Consumer Fraud Act ("DCFA"); (3) violation of the Delaware Deceptive Trade Practices Act ("DTPA"); (4) violation of the Electronic Fund Transfer Act ("EFTA"); (5) negligence; (6) breach of contract; (7) breach of good faith and fair dealing; (8) unjust enrichment; (9) conversion; and (10) negligence per se.

Plaintiffs' second attempt to articulate why Payoneer is at fault fares no better than the first. Rather than refine their claims, Plaintiffs have resorted to deleting many of their specific factual allegations and replacing them with vague and conclusory allegations, which are not entitled to the presumption of truth because they simply parrot the elements of various claims. For example, in an attempt salvage their EFTA claim, which unlike here, is only available for consumer transactions, Plaintiffs deleted their original allegations conceding that they used the Payoneer platform for business purposes and instead parrot the personal use element of the EFTA. Yet, the Payoneer Terms & Conditions (the "Terms"), under which Plaintiffs sue for breach of contract,

---

[1] Should the case proceed (which it should not), Payoneer will demonstrate that its systems were never breached—Plaintiffs were victims of a phishing scheme through no fault of Payoneer. (*See* FAC at ¶ 93.)

are clear that Payoneer's service is only for business use.  For this reason, as well as those set forth

below, the FAC, and each cause of action, are dismissible for multiple independent reasons:

- Plaintiffs' FAC must be dismissed because Plaintiffs acknowledge they agreed to the Terms, which specify that all disputes related to the Terms or Payoneer services must be filed in Delaware (Section I);

- Plaintiffs' EFTA claim fails—the EFTA does not apply because Plaintiffs did not have "accounts" and Payoneer is not a "financial institution" (Section II);

- The Payoneer Terms govern here, necessitating dismissal of Plaintiffs' negligence-based and quasi-contract claims, and limit any remedy for Plaintiffs' breach of contract claim to the amount of fees paid (Section IV);

- Plaintiffs' breach of contract claim fails because the contractual obligations Plaintiffs assert Payoneer breached are nowhere in the Terms and Plaintiffs have not alleged an obligation to refund (Section V);

- Plaintiffs' breach of good faith and fair dealing claim fails because Plaintiffs concede there is an express provision that addresses their claims (Section VI);

- Plaintiffs' negligence-based claims also fail because they are barred by the economic loss doctrine (Section VII);

- Plaintiffs' unjust enrichment claim fails because the parties' relationship is governed by a contract (Sections VIII);

- Plaintiffs' conversion claim fails because Plaintiffs cannot state a claim for conversion of money, and the parties' relationship is governed by a contract (Sections IX);

- Plaintiffs' consumer fraud claims fail because they have not alleged a misstatement (X);

- Plaintiffs' GBL claim also fails because Plaintiffs do not have statutory standing and they do not plead causation (Section XI);

- Plaintiffs' DCFA claim also fails because Plaintiffs have not alleged the challenged practices took place in Delaware and because the FAC's allegations do not satisfy Rule 9(b) (Section XII); and

- The DTPA claim fails because Plaintiffs do not have statutory standing (Section XIII).

Accordingly, this Court should dismiss Plaintiffs' FAC in its entirety and with prejudice.

## BACKGROUND

### 1.    Payoneer's Business Service

Payoneer is a financial services company that provides its business customers digital

2

accounts that allow them to send, use, and receive funds in nearly 200 countries and territories.[2] (FAC at ¶¶ 8, 39, 40.)  Use of Payoneer's services is conditioned on the acceptance of the Payoneer Terms during the registration process.  (Ex. 1 at § 28.4 to the Declaration of Colleen M. Gulliver, dated January 14, 2025 ("Gulliver Decl."), ECF No. 24-1.)[3]  Specifically, Payoneer is a "Money Service Business . . . and is a licensed money transmitter" (*id.* at § 1), which allows its business customers "to receive global business payments." (*Id.* at § 3.1).  Only a "business or individual engaging in commercial activity may apply to use" Payoneer services.  (*Id.* at § 16.1.)  The Terms also expressly prohibit personal use: "The Payoneer Services are intended to enable payments for business-related and commercial activities and are not intended for personal or person-to-person use.  We will block any and all payments initiated for personal reasons."  (*Id*. at § 3.9.)

Payoneer's Terms contain a forum selection clause ("Forum Clause"), which states "any dispute under these Terms and Conditions or otherwise in connection with your use of the Payoneer Services shall be brought exclusively in the courts of the State of Delaware." (Ex. 1 at § 28.4.)  The Terms also contain a governing-law provision, which states "The Payoneer Services and related disclosures are governed by the laws of the State of Delaware . . . ." (Ex. 1 at § 1; *see also id.* at § 28.4.)  Moreover, customers also agree that their "USE OF THE PAYONEER SERVICES IS AT [THEIR] OWN RISK" (Ex. 1 at § 24.12) and the Terms limit liability as follows:

> IN NO EVENT SHALL PAYONEER . . . BE LIABLE TO YOU OR ANY OTHER PARTY FOR ANY LOSS OR INJURY OR ANY DAMAGES, EITHER DIRECT, INDIRECT, PUNITIVE, SPECIAL, INCIDENTAL, CONSEQUENTIAL OR

---

[2] For purposes of this motion, Payoneer accepts Plaintiffs' allegations as true except to the extent they are not otherwise contradicted.  Payoneer reserves the right to dispute the accuracy of any factual allegation if the case proceeds past this motion (which it should not).

[3] The Court may consider the Terms because they are expressly referenced and integral to the FAC.  *See, e.g.*, *Ham v. Lenovo (U.S.) Inc.*, 664 F. Supp. 3d 562, 583 n.9 (S.D.N.Y. 2023) ("The Court may consider Lenovo's Sales Agreement because it is incorporated into the Complaint by reference."); *see also Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (a complaint is "'deemed to include . . . document[s] integral to the complaint'"; a document is "integral to the complaint" where the complaint "'relies heavily upon its terms and effect'" (citation omitted)); *see also Belfon v. Credit Check Total Consumerinfo.com, Inc.*, 2018 WL 4778906, at *3 (E.D.N.Y. Oct. 1, 2018) (considering "documents on published websites," including the terms and conditions).

OTHERWISE (INCLUDING, BUT NOT LIMITED TO LOST PROFITS, REPUTATION OR LOST SAVINGS) RESULTING FROM OR IN ANY WAY CONNECTED TO YOUR USE OF THE PAYONEER SERVICES, EVEN IF IT HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THIS LIMITATION OF LIABILITY SHALL APPLY REGARDLESS OF WHETHER THE CLAIM ASSERTED IS BASED ON CONTRACT, TORT, NEGLIGENCE, STRICT LIABILITY OR OTHERWISE.

(*Id.* at § 24.13.)

### 2.    Payoneer Advises Customers to Keep Their "Account Safe."

Payoneer expressly informs its business customers that they:

must take all reasonable steps to keep your Payoneer Account password safe at all times and never disclose it to anyone . . . . Any message you receive or website you visit that asks for your password, other than the Payoneer website, should be reported to us.  If you are in doubt whether a website is genuine, you should contact Payoneer Customer Care.  It is advisable to change your password regularly . . . in order to reduce the risk of a security breach.

(Ex. 1 at § 18.1.)  Payoneer further warns its users that they "must take all reasonable care to ensure that your e-mail account(s) and mobile phone are secure and only accessed by you, as your e-mail address and/or SMS may be used for Two Step Verification and/or to reset passwords or to communicate with you about the security of your Payoneer Account.  If the e-mail addresses or phone/mobile number registered with your Payoneer Account is compromised, you should immediately contact Payoneer Customer Care."  (*Id.* at § 18.5.)

### 3.    Plaintiffs' Allegations

Plaintiffs' claims arose from a series of attacks by third-party fraudsters on their Payoneer accounts, during which they transferred various sums from the accounts.  (*See* FAC at ¶¶ 83-84). Plaintiffs allege that on or about January 11, 2024, they received communications from Payoneer that their account passwords had been changed, followed by notifications that funds had been transferred from their accounts.  (*Id.* at ¶¶ 33-37.)  Payoneer voluntarily reimbursed Plaintiffs 35% of the funds that were stolen.  (*Id.*)  Plaintiffs sue for breach of contract and other claims, asserting that Payoneer should return the remainder of the stolen funds and that Payoneer misrepresented its

4

security measures and failed to safeguard their accounts from the fraudsters.  (*Id.* at ¶ 2.)

Plaintiffs concede that they entered into the Terms with Payoneer when they "sign[ed] up." (*See* FAC at ¶ 168.)  Indeed, in the first step of the registration process on Payoneer's website, registrants are asked to "[c]hoose the right Payoneer account type for your **business needs**." (Gulliver Decl., Ex. 3.)[4]  Plaintiffs are Argentinian citizens, the majority of which in their original complaint alleged that they used Payoneer's services for years to conduct their freelance businesses and receive payments from employers and clients.  (*See* Compl. at ¶¶ 24-28).  In their FAC, however, Plaintiffs removed those allegations and replaced them with conclusory—and contradictory—allegations that they only used their Payoneer accounts in an "individual capacity" for "personal use."  (*Compare* FAC at ¶¶ 33-37, *with* Compl. at ¶¶ 25-28.)

Similarly, in their original complaint, Plaintiffs had generally alleged that they signed up for Payoneer accounts after learning about the service from colleagues and friends.  (*See* Compl. at ¶¶ 24-28.)  In their FAC, however, Plaintiffs deleted these allegations and replaced them with vague and identical allegations that they signed up after "viewing its representations that it was a means to obtain a safe and secure U[.]S[.] bank account."  (*Compare* FAC at ¶¶ 33-37, *with* Compl. at ¶¶ 25-28.)  Plaintiffs, however, still do not identify any particular statement that they purportedly reviewed prior to entering into the Terms or when they viewed it.  (*See* FAC at ¶¶ 33-37.)

## LEGAL STANDARD

Under Rule 12(b)(6), a complaint must be dismissed if it does not "contain sufficient

---

[4] The Court may consider this webpage because the FAC incorporates screenshots of—or otherwise references—various other pages published publicly on Payoneer's website.  (*See* FAC at ¶¶ 39-45.)  A "complaint is deemed to include any . . . any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).  Additionally, "[i]t is entirely proper for the Court to take judicial notice of publically [sic] available documents on published websites." *Belfon*, 2018 WL 4778906, at *3; *see also Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 298 (E.D.N.Y. 2014) (considering the defendant's website on a motion to dismiss where "it was incorporated by reference in the Plaintiff's Complaint").

5

factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "[A]lthough the Court must still accept factual allegations as true, it should not credit 'mere conclusory statements[.]'" *Stephenson v. Citco Grp. Ltd.*, 700 F. Supp. 2d 599, 618-19 (S.D.N.Y. 2010) (quoting *Iqbal*, 556 U.S. at 678).

## ARGUMENT

**I.    THE FAC MUST BE DISMISSED BECAUSE VENUE IS IMPROPER.**

Plaintiffs' FAC must be dismissed because it was filed in the wrong court. "[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.* ("*Atl. Marine*"), 134 S. Ct. 568, 580 (2013). The presence of valid forum-selection clause "represents the parties' agreement as to the most proper forum" and "protects their legitimate expectations and furthers vital interests of the justice system." *Id*. at 581.

"[A] successful motion under *forum non conveniens* requires dismissal of the case." *Atl. Marine,* 134 S. Ct. at 583 n.8. Courts routinely dismiss cases when the parties have agreed to litigate in another forum. In *Martinez v. Bloomberg LP*, the Second Circuit affirmed dismissal because the claims "ar[ose] under" the parties' contract based on a forum selection clause. 740 F.3d 211, 214 (2d Cir. 2014) (citation omitted); *see also Ujvari v. 1stdibs.com, Inc.*, 2017 WL 4082309, at *11 (S.D.N.Y. Sept. 13, 2017) (granting motion to dismiss based on the forum selection clause). A forum-selection clause "stating that a court *shall* have jurisdiction over *any* dispute [is] a mandatory, rather than permissive, grant of jurisdiction." *Ashall Homes Ltd. v. ROK Ent. Grp. Inc.*, 992 A.2d 1239, 1250 (Del. Ch. 2010) (granting motion to dismiss based on forum selection clause). So too here. The Forum Clause states: "***Any*** dispute under these Terms and Conditions or otherwise in connection with your use of the Payoneer Services ***shall*** be brought ***exclusively*** in the courts of the State of Delaware[.]" (Ex. 1 at § 28.4 (emphasis added).)

6

Although Plaintiffs now allege the Terms are "buried" on Payoneer's website (FAC at ¶¶ 46-69, 168-171), "certainly where a party to such a contract stands upon its terms to enforce them for his own advantage, he cannot at the same time successfully disavow those terms so far as he conceives them to be to his disadvantage." *Albrecht v. United States*, 329 U.S. 599, 603 (1947). In *Upstate Shredding, LLC v. Carloss Well Supply Co.*, the plaintiffs brought an action for express warranty against the defendant but sought to disclaim the arbitration agreement contained therein. 84 F.Supp.2d 357, 363 (N.D.N.Y. 2000). The court explained that "if, as Plaintiffs allege, [defendant] breached the terms of the Express Warranty, then, by virtue of the arbitration clause contained in the Express Warranty," the defendant is entitled to relief. *Id.* Plaintiff could not "have their cake and eat it too" and acknowledged a body of law where "courts have similarly estopped parties from maintaining such inconsistent positions." *Id.* at 364. Thus, the court enforced the challenged arbitration provision. *Id.*; *see also Am. Healthcare Admin. Servs. v. Aizen*, 285 A.3d 461, 478 (Del. Ch. 2022) (a party "cannot cherry-pick the contractual provisions that he finds advantageous, while simultaneously ignoring [those] he finds inconvenient").

The same result is compelled here. Plaintiffs do not dispute that they entered into the Terms, which contain the Forum Clause, and they seek to enforce the Terms in their breach of contract claim. (FAC at ¶¶ 168-73.) Thus, Plaintiffs are estopped from maintaining the Forum Clause is unenforceable and the Court should dismiss the FAC to enforce the Forum Clause.

## II.     PLAINTIFFS' EFTA CLAIM FAILS.

### A.     Plaintiffs Still Fail to Allege that The Accounts Are Consumer Accounts.

The EFTA defines an "account," as "a demand deposit, savings deposit, or other asset account . . . **established primarily for personal, family, or household purposes**." 15 U.S.C. § 1693a(2) (emphasis added). The EFTA's implementing regulations ("Regulation E"), define an "account" as "a demand deposit (checking), savings, or other consumer asset account . . . held

directly or indirectly by a financial institution and **established primarily for personal, family, or household purposes**." 12 C.F.R. § 1005.2(b)(1) (emphasis added). "Accordingly, the EFTA does not apply to accounts that are used primarily or solely for commercial purposes." *Ironforge.com v. Paychex, Inc.*, 747 F. Supp. 2d 384, 402 (W.D.N.Y. 2010) (citation omitted) (dismissing claims).

In *Prignoli v. Bruczynski*, the court dismissed an EFTA claim brought by an attorney against his bank. 2021 WL 4443895, at *1-2 (E.D.N.Y. Sept. 28, 2021). The court held that the plaintiff, a sole proprietor, "failed to allege that the account in question was . . . 'established primarily for personal, family, or household purposes' and ha[d] instead merely alleged that he owns a 'bank account.'" *Id.* at *6.

Similarly, in *Maynard v. PayPal, Inc.*, the court dismissed an EFTA claim against PayPal because the complaint "[did] not permit an inference" that the account "was 'established primarily for personal, family, or household purposes.'" 2019 WL 3552432, at *10 (N.D. Tex. Aug. 5, 2019) (citation omitted). Rather, the "complaint only permit[ted] the court to draw the reasonable inference that the PayPal account was used for commercial transactions related to [plaintiffs'] sale of products." *Id.* As the court explained, "regardless whether the PayPal account was established by Maynard [in his individual capacity] or [his LLC] (or both), the fact that it was established primarily for business purposes precludes a viable claim for an EFTA violation." *Id.*

Plaintiffs' attempts to remedy the deficiencies in their original complaint by removing specific factual allegations and replacing them with conclusory allegations parroting the "personal use" requirement of the EFTA do not save their claims for two reasons. First, "the tenet that a court must accept as true all of the allegations . . . is inapplicable to legal conclusions." *Simon v. Smith & Nephew, In*c., 990 F. Supp. 2d 395, 402 (S.D.N.Y. 2013) (Engelmayer, J.) (quoting *Iqbal*, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere

8

conclusory statements, do not suffice." *Id*.  In *Yuille v. Uphold HQ Inc.*, the plaintiff asserted an EFTA claim after "unauthorized users siphoned" money from a cryptocurrency account.  686 F. Supp. 3d 323, 334 (S.D.N.Y. 2023).  The court dismissed the EFTA claim, in part, because "Plaintiff's conclusory allegation that '[her] accounts were established for personal, family or household purposes' . . . unsupported by facts to that effect, is insufficient to state a claim under the EFTA." *Id.* at 342 n.6 (citation omitted).  The same result is compelled here.

Second, "[i]f a plaintiff's allegations are contradicted by such a document, those allegations are insufficient to defeat a motion to dismiss." *Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002) (granting motion to dismiss based on review of incorporated release); *Taft v. Agric. Bank of China Ltd.*, 156 F. Supp. 3d 407, 410, 410 n.2 (S.D.N.Y. 2016) (holding the date contained in document incorporated by reference controlling, where plaintiff's allegations were contradictory).

So too here. According to the express language of the incorporated and integral Terms, Payoneer accounts can only be used for business purposes.  (*See, e.g.*, Ex. 1 § 3.1 (customers can "receive global business payments") & § 3.9 ("Payoneer Services are intended to enable payments for business-related and commercial activities and are not intended for personal or person-to-person use.").)  The Terms also incorporate a list of certain "Prohibited Transactions" (*id*. § 21.2), which states: "Payoneer Services enable customers to receive and make payments **in connection with their commercial activity**."  (Gulliver Decl., Ex. 4 (emphasis added).)  The list further prohibits transactions for a "Non-Business Use," such as "Person to Person (peer-to-peer) payments or businesses allowing only person to person payments." (*Id*.)[5]  Moreover, the website

---

[5] Although the FAC now alleges that Plaintiffs wanted "a safe US dollar account" (FAC ¶¶ 33-37), and that Plaintiffs Alliaud and Lucero opened accounts to hold their funds in U.S. dollars and protect against "high inflation" (*id.* at ¶ 33) and "economic instability" (*id.* at ¶ 37), none of these facts address the question of business versus personal use.

9

that Plaintiffs concede they visited to "sign-up" clearly states that Payoneer accounts are business accounts. (*See* Ex. 3 (asking registrants to "[c]hoose the right Payoneer account type for your **business** needs" by identifying whether the account is for (1) a "Freelancer or Service Provider"; (2) an "Online Seller"; (3) a "Marketplace or enterprise"; or (4) a "Small or medium sized business") (emphasis added).) Thus, Plaintiffs have not plausibly alleged their accounts are covered by the EFTA. Instead, as in *Prignoli* and *Maynard*, Plaintiffs' accounts are business accounts for sole-proprietorships and are not covered by the EFTA.

### B.      Payoneer is Not a Financial Institution.

Plaintiffs' EFTA claim also fails because Payoneer is not a financial institution. Plaintiffs allege that Payoneer violated several obligations under 15 U.S.C. § 1693f and 12 C.F.R. § 1005.11, which are only applicable to financial institutions. The EFTA defines a "financial institution" as "a State or National bank . . . or any other person who, directly or indirectly, holds an **account** belonging to a consumer." 15 U.S.C. § 1693a(9) (emphasis added). Payoneer is neither.

First, for the reasons stated above, Payoneer does not hold a consumer account because such an account must have been established for personal, family or household use. In *Stock v. Firstmark Servs.*, the court dismissed a plaintiff's EFTA claim under § 1693c, where she "failed to adequately allege that Defendant [was] a 'financial institution.'" 2018 WL 8193373, at *4 (C.D. Cal. Dec. 12, 2018). As the court explained, "[a]lthough Plaintiff alleges in a conclusory manner that Defendant is a 'financial institution' . . . the Court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (citation omitted).

Second, as Plaintiffs acknowledge (FAC at ¶ 49), the Terms state that "[t]he Payoneer Services are not a bank account nor do they offer the features and benefits of a traditional bank account. The funds held in connection with the Payoneer Services do not constitute deposits and do not earn any interest." (Ex. 1 § 3.5; *see also id.* § 29.1 ("does not constitute a bank account").)

10

Various allegations in Plaintiffs' FAC appear to concede this point. (*See* FAC at ¶¶ 2, 103, 114, 133, 141 ("akin to a US bank account"); *see also id.* at ¶ 40 ("[i]n contrast" to Payoneer, "American banks have strict requirements"); *id.* at ¶ 41 ("like a US bank").) Finally, Plaintiffs do not even attempt to allege that Payoneer is "a State or National bank, a State or Federal savings and loan association, a mutual savings bank, [or] a State or Federal credit union." 15 U.S.C. § 1693a(9).

Thus, dismissal is equally required because Plaintiffs have not alleged (nor can they) that Payoneer is a financial institution. The FAC baldly asserts that "Payoneer is a 'financial institution' as defined by the EFTA" (FAC at ¶ 152), that Plaintiffs' accounts were opened for "personal use" (*id.* at ¶¶33-37), and that "Payoneer holds and manages customer funds and facilitates electronic transfers, aligning with the definitions in the EFTA." *Id*. at ¶ 152. These allegations are mere legal conclusions devoid of factual support and are not entitled to the presumption of truth. Moreover, the Terms contradict this conclusory allegation and control here. Therefore, Plaintiffs' EFTA claim fails.

## III.    THE TERMS BAR PLAINTIFFS' COMMON LAW CLAIMS.

The Terms (a) preclude Payoneer's liability for the negligence-based and quasi-contract claims and (b) cap potential damages for Plaintiffs' breach of contract claim.

### A.    Plaintiffs' Negligence-Based and Quasi-Contract Claims Are Barred.

Limitation-of-liability clauses that bar tort and quasi-contract claims are enforceable under Delaware law. *See, e.g.*, *Ketler v. PFPA, LLC*, 132 A.3d 746, 747 (Del. 2016); *Matrix Parent, Inc. v. Audax Mgmt. Co.*, 319 A.3d 909, 945-46 (Del. Super. Ct. 2024) (dismissing unjust enrichment claim as barred by "contractual limitations on liability"). In Delaware, "a release of prospective negligence may be valid" when it meets three requirements. "First, the release must not be ambiguous. Second, the release must not be unconscionable. Finally, the release must not be

11

against public policy." *Hrycak v. Pub. Storage, Inc.*, 2019 WL 4751522, at \*3 (Del. Super. Ct. Sept. 30, 2019) (citation omitted).  The release here satisfies all three requirements.

Unambiguous.  In *Ketler*, the Supreme Court of Delaware upheld dismissal of a negligence claim based on the limitation-of-liability clause in a gym-membership contract, which stated the customer was "releas[ing] and discharge[ing] Planet Fitness from any and all claims, demands, injuries, damages, actions or causes of action."  132 A.3d at 747 (citation omitted). The Court held that such language was "clear and unequivocal."  *Id.*; *see also Hrycak*, 2019 WL 4751522, at \*4 (finding provision "clear and unequivocal" that limited "liability for any 'injury to persons' arising 'from any cause, including . . .  [the] negligence' of Public Storage" (alterations in original) (citation omitted)).

So too here.  The Terms state that "IN NO EVENT SHALL PAYONEER . . . BE LIABLE TO YOU . . . FOR ANY LOSS OR INJURY OR ANY DAMAGES, . . . RESULTING FROM OR IN ANY WAY CONNECTED TO YOUR USE OF THE PAYONEER SERVICES. . . . THIS LIMITATION OF LIABILITY SHALL APPLY REGARDLESS OF WHETHER THE CLAIM ASSERTED IS BASED ON CONTRACT, TORT, NEGLIGENCE, STRICT LIABILITY OR OTHERWISE."  (Ex. 1 at § 24.13.)  The Terms further state that use of Payoneer Services is at Plaintiffs "own risk."  (*Id.* at § 24.12.)  Like in *Ketler*, the Terms state all liability is released and specifically reference that this release applies to all theories of liability, including negligence.

Terms are not unconscionable.  As the *Ketler* Court advised, "[u]nconscionability is a concept that is used sparingly," and is only found with "an absence of meaningful choice and contract terms unreasonably favorable to one of the parties."  132 A.3d at 748 (citation omitted). "There is no deprivation of meaningful choice if a party can walk away from the contract."  *Id.*; *see also Hrycak,* 2019 WL 4751522, at \*5 (applying limitation of liability).  Here, Plaintiffs do not

12

allege (nor could they) that they were somehow forced to enter into the Payoneer Terms.  Plaintiffs were free not to use Payoneer or enter the Terms but instead freely entered into them.

Terms do not violate public policy.  The Delaware Supreme Court has held that a release of prospective negligence comports with public policy because "[n]o Delaware statute has been identified which bears on the validity of a release of prospective negligence." *Ketler*, 132 A.3d at 748.[6]  Thus, Plaintiffs' negligence-based and unjust-enrichment claims cannot proceed.

### B.    Plaintiffs' Damages Are Capped to Fees Paid.

The Terms also cap the amount and type of damages Plaintiffs can recover to the total fees paid and expressly exclude an award of punitive and consequential damages.  (Ex. 1 at § 24.13.)  Such provisions are enforceable under Delaware law.  *See, e.g.*, *Rob-Win, Inc. v. Lydia Sec. Monitoring, Inc.*, 2007 WL 3360036, at *5 (Del. Super. Ct. Apr. 30, 2007); *eCommerce Indus., Inc. v. MWA Intel., Inc.*, 2013 WL 5621678, at *45 (Del. Ch. Sept. 30, 2013) ("Under Delaware law, limitation on liability clauses that preclude various types of damages, such as consequential damages, are typically enforceable") (collecting cases).

In *Donegal Mut. Ins. Co. v. Tri-Plex Sec. Alarm Sys.*, the court recognized, as a matter of "first impression" in Delaware, that a contract clause seeking to limit a party's liability to $250 for negligence and breach of contract claims was enforceable.  622 A.2d 1086, 1088 (Del. Super. Ct. 1992).  The court explained that "the overwhelming number of courts which have considered [such clauses] have upheld them." *Id.* at 1089 (collecting cases).

Similarly, in *Rob-Win*, the court, relying on *Donegal*, upheld a $250 contractual limitation on damages—despite hundreds of thousands in claimed damages—and excluded consequential

---

[6] The Terms expressly state that "[n]othing in these Terms and Conditions shall operate to exclude liability for gross negligence, fraud or fraudulent misrepresentation or for any statutory liability . . ." (Ex. 1 at § 24.8.) Thus, the limitation of liability does not affect Plaintiffs' GBL, DCFA, DTPA, and EFTA claims.

and punitive damages.  2007 WL 3360036, at *5.  The court explained that the provision was "printed in plain bold type" and "clearly provide[d] protection against all potential claims" by stating "**WHETHER IN CONTRACT, TORT OR EQUITY, INCLUDING, BUT NOT LIMITED TO, ANY GENERAL, DIRECT, SPECIAL, INCIDENTAL, EXEMPLARY, PUNITIVE AND OR CONSEQUENTIAL DAMAGES, IRRESPECTIVE OF CAUSE.**" *Id.* at *6.

The same is true here.  The Limitation of Liability is emphasized in conspicuous capital letters, which state that (1) "IN NO EVENT SHALL PAYONEER . . . BE LIABLE TO YOU . . . FOR ANY . . . DAMAGES, EITHER DIRECT, INDIRECT, PUNITIVE, SPECIAL, INCIDENTAL, CONSEQUENTIAL OR OTHERWISE," (2) that "LIMITATION OF LIABILITY SHALL APPLY REGARDLESS OF WHETHER THE CLAIM ASSERTED IS BASED ON CONTRACT, TORT, NEGLIGENCE, STRICT LIABILITY OR OTHERWISE," and (3) that "IN NO EVENT SHALL PAYONEER'S LIABILITY TO YOU AT ANY TIME EXCEED THE AMOUNT OF THE TOTAL FEES YOU PAID BY YOU TO PAYONEER."  (Ex. 1 at § 24.13.)  Plaintiffs are thus precluded from seeking punitive or consequential damages, and their total recovery under the common law claims is limited to the total fees paid to Payoneer.

## IV.    PLAINTIFFS' BREACH OF CONTRACT CLAIM FAILS.

Plaintiffs contend Payoneer owed Plaintiffs four contractual duties that it allegedly breached: (1) Payoneer was "obligated to reasonably safeguard Plaintiffs' . . . Funds and Personal Information" (FAC at ¶ 168); (2) "Payoneer was obligated to . . . provide Plaintiffs . . . prompt, truthful, and adequate notice of any security breach or unauthorized access of Funds or Personal Information" (*Id.* ¶ 169); (3) "Payoneer . . . fail[ed] to investigate the Plaintiffs' claims of unauthorized payment" (*Id.* ¶ 170); and (4) "Payoneer . . . fail[ed] to refund the payment amount including all fees deducted from their accounts." (*Id.*)  The first three alleged breaches are not

14

obligations contained in the Terms.  As to the fourth alleged breach, Plaintiff has not alleged a breach of a payment obligation nor compliance with the requisite conditions precedent.

### A.    Plaintiffs Seek to Impose Contractual Obligations That Do Not Exist.

"In order to survive a motion to dismiss . . . the plaintiff must demonstrate: first, the existence of the contract, whether express or implied; second, **the breach of an obligation imposed by that contract**; and third, the resultant damage to the plaintiff."  *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003) (emphasis added).  To assert a breach, a plaintiff must identify an "express contract provision that was breached."  *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 901 A.2d 106, 116 (Del. 2006).

For example, in *Wal-Mart Stores, Inc.*, Wal-mart alleged defendants "failed to fulfill their contractual obligations . . . by failing to disclose material information about" certain insurance plans.  901 A.2d at 116.  The court dismissed the complaint, however, because "Wal–Mart [did] not identif[y] any express contract provision that was breached."  *Id*.  Similarly, in *Pratt v. Atalian Glob. Servs. Inc.*, the complaint alleged two breaches of an escrow agreement.  2020 WL 7028690, at *15 (S.D.N.Y. Nov. 30, 2020).  The court, applying Delaware law, analyzed the escrow agreement and held the plaintiff "has not identified any specific provision of the Escrow Agreement that Atalian allegedly breached," and, as a result, "fail[ed] to state a claim upon which relief may be granted."  *Id.* (citation omitted).

The same follows here.  As to the first alleged breach, nowhere do the Terms say Payoneer will "reasonably safeguard" information—rather, the Terms disclaimed such duties—and did so specifically in relation to the handling of personal information.  The Terms state that "YOUR USE OF THE PAYONEER SERVICES IS AT YOUR OWN RISK. THE PAYONEER SERVICES ARE PROVIDED ON AN 'AS IS' BASIS WITHOUT WARRANTIES OF ANY KIND."  (Ex. at 1 § 24.12.)  In addition, the Terms also state that "[w]e will ensure that all your personal

15

information is held in accordance with the data privacy and security provisions of applicable law and our published privacy policy.  Your use of the Payoneer Services is subject to the Privacy Policy which you agree to as part of these Terms and Conditions." (*Id.* at § 23.1.)  This same section of the Terms also directs users to "make yourself familiar with the Privacy Policy by visiting it on our website, at https://www.payoneer.com/legal/privacy-policy/." (*Id.*)  The Privacy Policy advises that "the transmission of information via the internet is not completely secure. Although we will do our best to protect your personal information, **we cannot guarantee the security of your data transmitted to our websites; any transmission is at your own risk**." (Gulliver Decl., Ex. 2 (Privacy Policy) (emphasis added).)  Plaintiffs accordingly cannot claim breach of a duty to "reasonably safeguard" information because no such duty exists.[7]

As to the second purported breach, Plaintiffs' assertion that the Terms obligated Payoneer "to . . . provide Plaintiffs . . . with . . . notice of any security breach" (FAC at ¶ 169) lacks merit. Neither the Terms nor the Privacy Policy say Payoneer is obligated to provide users with notice of a security breach.  To the contrary, the only reference to a security breach is in Section 18, which imposes an obligation on Plaintiffs to "take all reasonable steps to keep your Payoneer Account password safe." (Ex. 1 at § 18.1.)

As to the third purported breach, the Terms do not state that Payoneer undertook an obligation to "investigate the Plaintiffs' claims of unauthorized payment" (FAC at ¶ 170).  The provision governing notice of an unauthorized payment is section 24.3, which does not impose an obligation on Payoneer to investigate Plaintiffs' assertion of unauthorized payments.  Payoneer cannot be liable for breaching contractual obligations it did not assume.

---

[7] To the extent Plaintiffs try to morph their contract claim and assert it relies on Section 23.1's statement that information is held in accordance with "data privacy and security provisions of applicable law," such an attempt fails. Nowhere does the FAC cite "data privacy and security provisions" of any law or allege Payoneer breached them.

16

**B.        Plaintiffs Have Not Adequately Alleged a Refund Obligation.**

As to the fourth purported breach, Plaintiffs do not cite to any provision in the Terms that requires a refund, but they are ostensibly referring to Section 24.3, which governs "liability." This section states that "[i]n case of a (i) a bona fide unauthorized payment or (ii) payment that was incorrectly executed due to an error by us, we should at your request promptly refund the payment amount . . . [but] [t]his shall not apply . . . where the unauthorized payment arises from your failure to keep the personalized security features of your Payoneer account safe in accordance with the provisions of Keeping your Payoneer Account Safe above." (Ex. 1 at § 24.3.)

Plaintiffs have not plausibly alleged a breach of this obligation for two reasons. First, Plaintiffs have not alleged there was "a bona fide unauthorized payment," or that the payments were "incorrectly executed" due to an "error," under the Terms. (*See* Ex. 1 at § 24.3.) Moreover, Plaintiffs have also failed to allege that the payment did not arise from a "failure to keep the personalized security features of [their] Payoneer Accounts safe." (*Id*.) Without factual allegations to support the application of Section 24.3, they have not sufficiently alleged a breach.

Second, section 24.3 is subject to a condition precedent that Plaintiffs "must [have] take[n] all reasonable steps to keep [their] Payoneer Account password safe at all times and never disclose it to anyone." (*Id.* at § 18.1.)

> It is a general rule, in an action on a contract obligation, that the plaintiff must allege the occurrence of conditions precedent. Thus, where the benefit of a clause in a contract will inure to the plaintiff only on the occurrence of certain conditions, he must allege that those conditions existed.

*Pobst v. Nanticoke Mem'l Hosp.*, 1991 WL 166073, at *5 (Del. Super. July 30, 1991) (cleaned up) (dismissing claim for failure to allege existence of conditions precedent). Plaintiffs here do not allege—because they cannot—that they did not disclose their passwords to anyone. Thus, the breach of contract claim fails and must be dismissed.

17

**V.     PLAINTIFFS' CLAIM FOR BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING FAILS.**

Plaintiffs fail to state a claim for breach of the implied duty of good faith and fair dealing because an implied contract claim fails when, as here, a contract's express terms control.  "[T]he implied covenant is not a panacea for the disgruntled litigant" and is "[o]nly rarely invoked successfully."  *Fisk Ventures, LLC v. Segal* ("*Fisk*"), 2008 WL 1961156, at *10 (Del. Ch. May 7, 2008), *aff'd,* 984 A.2d 124 (Del. 2009).  To state a claim for breach of the implied covenant, Plaintiffs must "allege a specific implied contractual obligation and allege how the violation of that obligation denied [them] the fruits of the contract."  *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 888 (Del. Ch. 2009).  "[B]ecause the implied covenant is, by definition, **implied**, and because it protects the **spirit** of the agreement rather than the form, it cannot be invoked where the contract itself expressly covers the subject at issue."  *Fisk*, 2008 WL 1961156, at *10; *see also Nemec v. Shrader*, 991 A.2d 1120, 1125 (Del. 2010) ("A party "generally cannot base a claim for breach of the implied covenant on conduct authorized by the agreement.").  Thus, "the mere exercise of one's contractual rights, without more, cannot constitute . . . a breach of the implied covenant of good faith and fair dealing."  *Fisk*, 2008 WL 1961156 at *11.

In *Kuroda*, the plaintiff brought both a breach of express contract claim and implied covenant of good faith and fair dealing claim over its LLC agreement with defendants.  971 A.2d at 877.  The court dismissed the breach of implied contract claim because the plaintiff's "alleged injuries that result from defendants' purported failure to pay him amounts to which he is entitled under the LLC agreement are, according to the complaint, governed by express provisions of the LLC agreement."  *Id.* at 888-89; *see Fisk*, 984 A.2d at 124 (affirming dismissal because express terms covered the issue).

So too here. The FAC does not allege that any specific, implied contractual obligations existed or were violated. The FAC merely alleges that, "[u]nder the contract, Payoneer had a good faith obligation to not only safeguard the Funds and Personal Information, but also to provide Plaintiffs . . . with prompt, truthful, and adequate notice of any security breach or unauthorized access." (FAC ¶ 176.) As outlined in Section III, *supra*, however, the Terms explicitly address "the risk of a security breach" (Ex. 1 at § 18.1), Plaintiffs' obligations with respect to keeping their accounts safe (*see id.* at § 18 ("Keeping Your Payoneer Account Safe")), and the circumstances under which Payoneer is obligated to issue a refund to an account holder for an unauthorized or erroneous payment (*id.* at § 24.3.) Moreover, Plaintiffs expressly agreed to accept Payoneer's services "AS IS." (*Id*. 1 at § 24.12.) Plaintiffs cannot ask the Court to appease them by rewriting the Terms, which they "now believe[] to have been a bad deal." *Nemec*, 991 A.2d at 1126. Accordingly, the breach of implied duty of good faith and fair dealing claim fails.

## VI. PLAINTIFFS' NEGLIGENCE-BASED CLAIMS ARE ALSO BARRED BY THE ECONOMIC LOSS DOCTRINE.

The FAC's two negligence-based causes of action (for negligence and negligence per se) also fail because they are barred by the economic loss doctrine ("ELD"). The ELD "prohibits recovery in tort where a product has damaged only itself (*i.e.*, has not caused personal injury or damage to *other* property) and, the only losses suffered are economic in nature." *Danforth v. Acorn Structures, Inc.*, 608 A.2d 1194, 1195 (Del. 1992) (applying doctrine). Delaware courts have held that "where an action is based entirely on a breach of . . . a contract . . . and not on a violation of an independent duty imposed by law, a plaintiff must sue in contract and not in tort." *Edelstein v. Goldstein*, 2011 WL 721490, at *7 (Del. Super. Ct. Mar. 1, 2011) (quoting *Pinkert v. Olivieri,* 2001 WL 641737, at *5 (D. Del. May 24, 2001)); *see also Danforth*, 608 A.2d at 1200 (The ELD "is especially suited to cases where privity of contract does exist . . . [because] it is

19

presumed that the parties . . . have allocated the risk of product nonperformance through the bargaining process."). In *Mikkilineni v. PayPal, Inc.*, for instance, the court dismissed the negligence claim because the customer's alleged harm was "exclusively profit-based" and, "[a]t best . . . signal[ed] a breach-of-contract claim potentially compensable under [the] user agreement." 2021 WL 2763903, at *6 (Del. Super. Ct. July 1, 2021).

So too here. Plaintiffs allege only economic loss by seeking "[a]n award of actual damages . . . for their **financial losses** and other **economic harm**." (FAC at ¶¶ 166(A), 201(A) (emphasis added).) Accordingly, plaintiff's negligence-based claims are barred.

## VII.    THE UNJUST ENRICHMENT CLAIM FAILS FOR ADDITIONAL REASONS.

Plaintiffs' unjust enrichment claim fails for two additional reasons. First, Delaware law is clear that "[a] claim for unjust enrichment is not available if there is a contract that governs the relationship between parties that gives rise to the unjust enrichment claim." *Kuroda*, 971 A.2d at 891. "Courts developed unjust enrichment . . . as a theory of recovery to remedy the **absence** of a formal contract." *Palese v. Del. State Lottery Off.*, 2006 WL 1875915, at *5 (Del. Ch. June 29, 2006), *aff'd,* 913 A.2d 570 (Del. 2006) (emphasis added) (citation omitted). Accordingly, "[w]hen the complaint alleges an express, enforceable contract that controls the parties' relationship . . . a claim for unjust enrichment will be dismissed." *Bakerman v. Sidney Frank Importing Co.*, 2006 WL 3927242, at *18 (Del. Ch. Oct. 10, 2006) (citations omitted).

In *Palese,* the court dismissed an unjust enrichment claim regarding prize money, because "a binding contract exist[ed] between the parties that addresse[d] the particular subject matter." 2006 WL 1875915, at *5; *see also Capitaliza-T Sociedad De Responsabilidad Limitada De Capital Variable v. Wachovia Bank of Del. Nat'l Assoc.* ("*Capitaliza-T*"), 2011 WL 864421 at *8 (D. Del. Mar. 9, 2011) (dismissing claim because "it is that contract . . . that determines who, if anyone, is entitled to the funds in the Wachovia account").

The same result is compelled here.  Plaintiffs concede that their relationship with Payoneer is governed by the Terms and bring an action to enforce them.  (*See, e.g.,* FAC at ¶ 168 ("Plaintiffs . . . entered into a contract with Payoneer . . . .") and ¶ 170 ("Payoneer breached the contract with Plaintiffs . . . by failing to take reasonable measures to safeguard their Funds and Private Information.").)  As an enforceable contract applies, the unjust enrichment claim fails.

Second, the unjust enrichment claim also fails because Plaintiffs have not plausibly alleged two required elements: "an enrichment" or "the absence of a remedy provided by law."  *Alltrista Plastics, LLC v. Rockline Indus., Inc.*, 2013 WL 5210255, at *11 (Del. Super. Ct. Sept. 4, 2013) (citing *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010)).  The FAC does not allege how Payoneer has been unjustly enriched.  To the contrary, as Plaintiffs allege, the money did not go to Payoneer but to unidentified third parties.  (*See* FAC at ¶¶ 101, 103 (alleging that "fraudsters" and "thieves" stole customers' funds).)  Moreover, Plaintiffs have failed to allege the absence of an adequate remedy at law because "the alleged wrong arises from a relationship governed by contract."  *Nemec*, 991 A.2d at 1130.

## VIII.   PLAINTIFFS FAIL TO STATE A CLAIM FOR CONVERSION FOR ADDITIONAL REASONS.

Plaintiffs' conversion claim fails for two additional reasons: (a) Plaintiffs cannot assert a conversion claim for conversion of money; and (2) it is duplicative of the breach of contract claim.

"Conversion is 'any distinct act of dominion wrongfully exerted over the property of another, in denial of [the plaintiff's] right, or inconsistent with it.'"  *Kuroda*, 971 A.2d at 889 (quoting *Drug, Inc. v. Hunt*, 168 A. 87, 93 (Del. 1933)).  There is, however, a "general rule prohibiting claims for the conversion of money."  *Kuroda*, at 971 A.2d at 889.  Although Delaware has not formally recognized an exception to this rule, other jurisdictions have determined "an

action for conversion of money will lie only where there is an obligation to return the identical money delivered by the plaintiff to the defendant." *Id.* at 890 (citation omitted).

In *Capitaliza-T*, the plaintiff sued a bank for the return of funds deposited there. 2011 WL 864421, at *3. The court explained that "[a] conversion claim based on money deposited in an account but not returned is not recognized under Delaware law, which requires as an element of conversion the taking of specific property." *Id*. The court dismissed the claim because "any currency can generally satisfy the obligation." *Id.*; *see also Kuroda*, 971 A.2d at 890 (dismissing conversion claim because the damages could be "satisfied 'by the payment of money generally.'") (citation omitted). The same result follows here. Plaintiffs allege that Payoneer has their "currency" and seek "funds taken from their accounts." (FAC ¶¶ 190, 192.) A conversion claim does not lie.

In addition, "a plaintiff bringing a claim based entirely upon a breach of the terms of a contract generally must sue in contract, and not in tort." *West v. Access Control Related Enters., LLC*, 2019 WL 2385863, at *4 (Del. Super. Ct. June 5, 2019) (citation omitted). "[I]n order to assert a tort claim along with a contract claim, the plaintiff must generally allege that the defendant violated an independent legal duty, apart from the duty imposed by contract." *Kuroda*, 971 A.2d at 889. In *West*, the plaintiff brought an action after termination of his employment, asserting claims for breach of contract and conversion, among others. 2019 WL 2385863, at *2. The plaintiff sought damages including the payment of stock for both the breach of contract and conversion claims. *Id.* at *5. The court dismissed the conversion claim as "duplicative" because the plaintiff "ha[d] not alleged a separate conversion theory." *Id*.

So too here. Plaintiffs do not even attempt to allege an independent legal duty. Instead, Plaintiffs parrot their theory for breach of contract. The FAC alleges that Payoneer is liable for

22

conversion because "Plaintiffs have a legal . . . right to the funds" (FAC at ¶ 193), but Payoneer "assumed control of the funds, and then failed to secure Plaintiffs' . . . Funds and Personal Information, permitting unauthorized access to the funds" (*id.* at ¶ 191.)   Similarly, the relief sought by both claims is the same.   The FAC seeks "a return of their funds with interest" for the conversion claim (*id.* at ¶ 193), and damages for the "failure to return" their funds for the breach of contract claim (*id.* ¶ at 172(ii)).   Thus, the conversion claim fails.

## IX.    PLAINTIFFS HAVE NOT ALLEGED ANY MISLEADING STATEMENTS TO SUPPORT THEIR CONSUMER FRAUD CLAIMS.

Plaintiffs' GBL and DCFA claims also fail because they have not alleged Payoneer made any misstatement.   To state a claim under GBL, Plaintiffs must adequately allege that an act or practice was misleading in a material way and must allege facts that support their claim that the challenged statements are false or misleading.  *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 142 (E.D.N.Y. 2018).   Similarly, to bring a claim under the DCFA, a plaintiff must plausibly allege that the defendant made a "misrepresentation . . . of any material fact." *Teamsters Local 237 v. Astrazeneca Pharm. LP*, 136 A.3d 688, 693 (Del. 2016) (affirming dismissal of DCFA claim).   "[P]laintiffs must 'plausibly allege that a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled.'" *Turk v. Rubbermaid Inc.*, 2022 WL 836894, at *7 (S.D.N.Y. Mar. 21, 2022).   When "determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial" and "the presence of a disclaimer or similar clarifying language may defeat a claim of deception." *Sandoval v. Uphold HQ Inc.,* 2024 WL 1313826, at *7 (S.D.N.Y. Mar. 27, 2024).

In *Tomasino v. Estee Lauder Cos.*, plaintiff pointed "to various aspects of the [Defendant's] marketing that she contend[ed] were used to lend credibility to the claimed efficacy of [its] products." 44 F. Supp. 3d 251, 255 (E.D.N.Y. 2014).  The court dismissed the GBL claims because

23

"the complaint [did] not provide 'factual allegations explaining **how** any specific advertising claims were' false or misleading." *Id*. at 257-258 (emphasis added). The plaintiff's "mere conclusory statements" that they are misleading "do not suffice" to defeat the motion to dismiss. *Id*.

So too here. Plaintiffs' conclusory statements are insufficient. Plaintiffs allege that "Payoneer engaged in deceptive acts and practices by misrepresenting the security measures of its platform and failing to protect customers' funds and personal information" (FAC at ¶ 132), and that the "specific deceptive acts" were that Payoneer "[a]dvertised its services as secure and trustworthy akin to a US bank account on its website, promising customers their funds and personal information were safe; claimed to use advanced security measures to protect customer accounts; failed to disclose that its security measures were inadequate, leaving customer accounts vulnerable to unauthorized access and theft; and [c]ontinued to represent that its platform was secure even after becoming aware of significant security vulnerabilities and breaches" (*id*. at ¶ 133). These same general statements form the basis of Plaintiffs' DCFA claims. (*See id*. at ¶ 141.) Yet, Plaintiffs do not identify any *specific statements* or how a reasonable consumer would be misled. Rather, Plaintiffs' FAC concedes that it has several "theor[ies]" as to the cause of the attack such that it cannot plausibly allege that any statement made by Payoneer was misleading. (*See* FAC at ¶¶ 89-95.)

Even if Plaintiffs had identified specific statements (they have not), Payoneer's disclaimers expressly dispel any potential deception. In *Sandoval*, the plaintiffs argued that defendant's "marketing and user interface created the overall impression" that a third-party product was Defendant's product, which "gave consumers a false sense of safety and security." 2024 WL 1313826, at *8. But the defendant provided a disclaimer that expressly disclaimed any liability

24

related to the plaintiffs' use of the third-party product. *Id*. at *9-10. The court dismissed the GBL claim because the disclaimer at issue "'addresse[d] the precise deception' alleged in plaintiffs' complaint, [such that] 'there [wa]s no possibility that a reasonable consumer would have been misled.'" *Id*. at *7.

The same result is compelled here. Payoneer expressly disclaimed that it "cannot guarantee the security of your data transmitted to our websites; any transmission is at your own risk" (Ex. 2 (Privacy Policy)), and that "YOUR USE OF THE PAYONEER SERVICES IS AT YOUR OWN RISK. THE PAYONEER SERVICES ARE PROVIDED ON AN 'AS IS' BASIS WITHOUT WARRANTIES OF ANY KIND" (Ex. at 1 § 24.14). Payoneer also warns its users that they "must take all reasonable care to ensure that your e-mail account(s) and mobile phone are secure and only accessed by you, as your e-mail address and/or SMS may be used for Two Step Verification and/or to reset passwords or to communicate with you about the security of your Payoneer Account." (Ex. 1 at § 18.1.) The Terms' disclaimers address the precise deception alleged in the FAC. Therefore, Plaintiffs have not plausibly alleged that Payoneer made a misleading statement and their GBL and DCFA claims fail as a matter of law.

## X.     PLAINTIFFS' GBL CLAIM FAILS FOR ADDITIONAL REASONS.

Plaintiffs' GBL claim also fails because: (a) they have not alleged standing to invoke the GBL; and (b) Plaintiffs have not alleged the required causation.

### A.     Plaintiffs Have Not Alleged Statutory Standing Under the GBL.

Plaintiffs, citizens of Argentina, have not alleged statutory standing to bring a GBL claim. Leaving aside that Plaintiffs purport to sue under New York's and Delaware's consumer protection statutes and both cannot apply simultaneously to the same transaction, the GBL "only protect[s] consumers when 'the transaction in which [they] [are] deceived . . . occur[s] in New York.'" *Zachmann v. Coleman Co.*, 2022 WL 161480, at *3 (S.D.N.Y. Jan. 18, 2022) (quoting *Goshen v.*

*Mut. Life Ins. Co.*, 98 N.Y.2d 314, 324 (2002)).  To determine whether a plaintiff has been deceived in New York, the Second Circuit has established the following parameters: (1) "some part of" the transaction must actually occur in New York; or (2) a plaintiff must "actually view a deceptive statement while in New York."  *Cruz v. FXdirectDealer, LLC*, 720 F.3d 115, 123-24 (2d Cir. 2013).  "New York's highest court . . . has plainly held that 'hatching a scheme' in New York does not mean the consumer 'transaction' has the requisite nexus to satisfy the territoriality requirement of the GBL."  *Miramontes v. Ralph Lauren Corp.*, 2023 WL 3293424, at *5 (S.D.N.Y. May 5, 2023) (dismissing claim because "Plaintiff was deceived in Texas, not New York – no matter where Defendant's marketing team decided what to put on the labels of the sweater").

In *Wright v. Publishers Clearing House, Inc.*, the plaintiffs filed an amended complaint in response to the court's dismissal of their GBL claim for a lack of transactional nexus.  439 F. Supp. 3d 102, 110 (E.D.N.Y. 2020).  There, the plaintiffs sought to bring a GBL claim against the defendant, whose principal place of business was in New York.  *Id.*  The court explained that "the new allegations assert that the Defendants hatched the deceptive scheme in New York; sent the relevant advertising materials from New York; and received payment and processed orders in New York."  *Id.*  The court concluded, however, that "[t]hese facts neither individually nor cumulatively establish that some part of the underlying transaction occurred in New York State."  *Id.*; *Neala Commc'ns LLC v. Xerox Corp.*, 2024 WL 4042092, at *8 (W.D.N.Y. Sept. 4, 2024) (dismissing claim; "[m]arketing plans created in New York but carried out elsewhere do not suffice").

The same result is compelled here.  Plaintiffs, who are Argentine citizens (FAC at ¶¶ 33-37), seek to repackage the allegation that Payoneer's principal place of business is in New York by alleging that Payoneer "originated" the scheme from New York and "disseminated" statements

26

from there (*id.* at ¶ 132).  Such allegations have been repeatedly held insufficient.  And Plaintiffs post-transaction contacts are entirely irrelevant.  (*Id.*)  Plaintiffs cannot invoke the GBL.

### B.    Plaintiffs Have Not Alleged Causation.

Plaintiffs' GBL claim also fails to plead the required causation.  "To state a claim under [GBL], a plaintiff must allege . . . [that] the plaintiff was injured **as a result**" of the deceptive act. *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) (emphasis added) (dismissing claim).  A plaintiff must allege that he saw the "statements **before** he purchased . . . . If the plaintiff did not see any of these statements, they could not have been the cause of his injury."  *Rapcinsky v. Skinnygirl Cocktails, L.L.C.*, 2013 WL 93636, at *6 n.3 (S.D.N.Y. Jan. 9, 2013) (emphasis added); *see also Zachmann*, 2022 WL 161480, at *4 (holding that "although the Court could infer causation from plaintiffs' allegations of reliance, these allegations are conclusory and thus cannot be credited").

In *Oden v. Boston Scientific Corp.*, the plaintiff brought a GBL claim against a manufacturer of an implant for statements made in its brochure and on its website.  330 F. Supp. 3d 877, 902 (E.D.N.Y. 2018), *adhered to on reconsideration,* 2019 WL 1118052 (E.D.N.Y. Mar. 11, 2019).  The court held that the conclusory allegation that "Plaintiff . . . prior to the date of Plaintiff's implant surgery, relied on the Defendant's representations about the product" was insufficient because the allegation did not "provid[e] any indication that Plaintiff ever saw these statements and, to the extent he did, where, when and how Plaintiff came to view [them].  In other words, the relevant factual background to support the above statements is simply lacking."  *Id.*

So too here.  Plaintiffs previously alleged that they signed up for Payoneer after learning about it from colleagues and friends and did not allege that they reviewed any of the unspecified misrepresentations before sign-up.  (Compl. at ¶¶ 25-28.)  Now, in their FAC, Plaintiffs have deleted these specific factual allegations and replaced them with contradictory and vague

27

allegations that they all signed up after "viewing its representations that it was a means to obtain a safe and secure U.S. bank account" (*see* FAC at ¶¶ 33-37) and "relied on Payoneer's representations regarding the security of its platform" (*id.* at ¶ 135.)  Yet, Plaintiffs do not identify **any** particular allegedly misleading statement to which they were purportedly exposed nor when they purportedly viewed it.  Thus, Plaintiffs have not alleged causation.

## XI.    THE COURT MUST DISMISS PLAINTIFFS' DCFA CLAIM.

Plaintiffs' DCFA claim fails because: (a) Plaintiffs have not alleged the challenged practice took place in Delaware; and (b) their allegations do not comport with Rule 9(b).

### A.    Plaintiffs Do Not Allege that the Challenged Practice Occurred in Delaware.

Plaintiffs do not have standing to bring a DCFA claim, which "requires that the unfair practice occur 'in part or wholly within [Delaware].'"  *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 901 A.2d 106, 117 (Del. 2006) (affirming dismissal of claim under DCFA because complaint did "not allege that any of the conduct at issue took place in Delaware").  Additionally, Delaware incorporation "is **not sufficient** to permit application of the DCFA to out-of-state conduct." *Yarger v. ING Bank, fsb*, 285 F.R.D. 308, 323 n.19 (D. Del. 2012) (emphasis added); *Travis v. Navient Corp.*, 460 F. Supp. 3d 269, 283 (E.D.N.Y. 2020) (dismissing DCFA claim because plaintiffs did "not allege that any unfair or deceptive merchandising practices occurred 'in part or wholly within Delaware'") (quoting 6 Del. C. § 2512).

In *Theis v. Viewsonic Corp.*, plaintiffs sought to assert a DCFA claim but did not allege "that a Delaware consumer was deceived by Defendant's alleged practices, or of any other Delaware connection."  2013 WL 1632677, at *2 (D. Del. Apr. 16, 2013).  The court dismissed the claim because "[d]efendant's status as a Delaware corporation may give this Court personal jurisdiction . . . but it is by itself insufficient to allow Plaintiff to state a claim under the Delaware Consumer Fraud Act for an act occurring outside of Delaware."  *Id.*

So too here.  Although Payoneer is incorporated in Delaware, Plaintiffs are each "foreign nationals" of Argentina and nowhere allege that any of the disputed conduct occurred in Delaware. (*See* FAC at ¶ 9.)  Thus, the DCFA claim fails a matter of law.

## B.    Plaintiffs' DCFA Claim Was Not Pled with Particularity.

"[C]laims under the DCFA must be pled with particularity under Rule 9(b)."  *Homsey v. Vigilant Ins. Co.*, 496 F. Supp. 2d 433, 438 (D. Del. 2007).  "The circumstances of the alleged fraud must be pleaded sufficiently to place defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior."  *Theis*, 2013 WL 1632677, at *1 (cleaned up) (dismissing DCFA claims because plaintiffs' allegations fell "far short of identifying any precise misconduct by Defendant"). Under Rule 9(b), the complaint "must describe the time, place, and contents of the false representations or omissions, as well as the identity of the person making the statement and the basis for the statement's falsity."  *Diaz v. FCA U.S. LLC*, 693 F. Supp. 3d 425, 429 (D. Del. 2023).

In *Eames v. Nationwide Mutual Insurance. Co.*, the court dismissed plaintiffs DCFA claim under Rule 9(b) because "the Complaint d[id] not provide any facts concerning what documents the Plaintiffs received, or when or from whom they received such documents."  412 F. Supp. 2d 431, 438 (D. Del. 2006).  The plaintiffs then attempted to replead the claim, which the Court still held was deficient, because "nowhere d[id] the Amended Complaint explain what statements Nationwide made, or when or in what format or by whom, to lead Plaintiffs to such a belief." *Eames v. Nationwide Mut. Ins. Co.*, 2008 WL 4455743, at *10 (D. Del. Sept. 30, 2008).

The same result is compelled here. Plaintiffs allege only that "Payoneer engaged in deceptive acts and practices by misrepresenting the security measures of its platform and failing to protect customers' funds and personal information," and that such acts included "[a]dvertising and promoting their services as secure and reliable; [p]romising advanced security measures to

29

protect customer accounts; [f]ailing to disclose known vulnerabilities in its security measures and systems; [and] [c]ontinuing to claim that their platform was secure even after multiple security breaches." (FAC at ¶ 141.) Plaintiffs' allegations are vague and non-specific. They do not allege the **contents** of any false representation or specifically outline why they claim a particular statement is false. Most importantly, Plaintiffs do not allege which particularized statements they each were exposed to, when and how. Instead, Plaintiffs vaguely assert that they "view[ed] representations that [Payoneer] was a means to obtain a safe and secure US bank account." (FAC at ¶¶ 34-37.) This is insufficient.

## XII.    PLAINTIFFS LACK STATUTORY STANDING FOR A DTPA CLAIM.

Plaintiffs' DTPA claim fails because they do not have standing to bring such a claim. The DTPA "is intended to address unfair or deceptive trade practices that interfere with the promotion and conduct of another's business." *Grand Ventures, Inc. v. Whaley*, 632 A.2d 63, 65 (Del. 1993) (affirming denial of claim). The Delaware Supreme Court has stated that the business interference necessary to have standing is interference "with the 'horizonal' relationships between various business interests." *Id*. at 70. "A horizontal business relationship is one that exists between at least two businesses on the same market level, because they manufacture similar products in the same geographic region, or are direct competitors." *Livery Coach Sols., L.L.C. v. Music Express/E., Inc.*, 245 F. Supp. 3d 639, 648 (D. Del. 2017) (internal quotations and citation omitted).

Although Plaintiffs originally alleged that they had business accounts (*see* Compl. at ¶¶ 25-28) and now allege that they have personal accounts (FAC at ¶¶ 33-37), in either scenario they do not allege that they are direct competitors or that their businesses are on the same market level as Payoneer. Therefore, they lack standing to bring a DTPA claim.

### CONCLUSION

Payoneer respectfully requests that this Court dismiss the FAC with prejudice.

Dated: January 14, 2025             **DLA Piper LLP (US)**

Colleen Carey Gulliver
1251 Avenue of the Americas
New York, New York 10020-1104
Phone: (212) 335-4500
Fax: (212) 335-4501
Email: colleen.gulliver@us.dlapiper.com

31

## CERTIFICATE OF COMPLIANCE WITH PAGE AND WORD LIMITATIONS

I hereby certify that this memorandum of law complies with the Court's order granting permission to file an oversized brief not to exceed 30 pages or 10,500 words. (ECF No. 30). According to the word-processing system used to prepare this memorandum of law, the total word count for all printed text exclusive of the material omitted under Local Rule 7.1(c) is 10,265 words and does not exceed 30 pages.

Dated: January 14, 2025

_____
Colleen Gulliver